UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JESSE REZENDES, *on behalf of himself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>MITSUBISHI MOTORS NORTH AMERICA, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. 22-CV-10211-AK<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION TO DISMISS**

**A. KELLEY, D.J.**

This is a putative class action brought against an automobile manufacturer, alleging various forms of impropriety with respect to a classwide defect in the hoods of 2022 Mitsubishi Outlander vehicles. Plaintiff Jesse Rezendes ("Mr. Rezendes") asserts six causes of action, on behalf of both himself and a putative class of Outlander owners and lessees, against the manufacturer, Mitsubishi Motors North America, Inc. ("Mitsubishi"). Mitsubishi has moved to dismiss all six causes of action for failure to state a claim. For the following reasons, that motion will be **GRANTED** in part, with respect to Counts 1, 2, and 4, and **DENIED** in part, with respect to Counts 3, 5, and 6.

**I.    BACKGROUND**

On a motion to dismiss, the Court draws all inferences in favor of the plaintiff, and accepts all facts alleged as true for the purpose of determining whether the complaint survives. See Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014). Accordingly, all alleged

1

facts recited below are taken from the allegations in plaintiff's First Amended Complaint, [Dkt. 16, ("FAC")], unless otherwise stated.

### A.  Alleged Facts

#### 1.  The 2022 Mitsubishi Outlander

The 2022 Mitsubishi Outlander is a compact crossover SUV marketed, sold, warranted, and serviced by Mitsubishi.  Mitsubishi began selling this model in February 2021 and has since sold thousands of units.  The 2022 Outlanders suffer from a classwide "Hood Defect," which causes the vehicles' hoods to flutter and bounce when driving at various speeds, in windy conditions, or over bumps.  The hoods flutter and bounce more violently as the vehicle speed increases.  The Hood Defect poses a potential to distract drivers from other vehicles and pedestrians by causing them to be concerned that their vehicle's hood is about to become unlatched and open.  The Hood Defect may also cause sun rays to reflect off the hood and into the driver's line of sight, inhibiting the driver's ability to observe surrounding vehicles and pedestrians; cause further structural damage to the hood itself; and impair vehicular aerodynamics and fuel economy.

Allegedly, Mitsubishi became aware of the Hood Defect prior to the first sales of the 2022 Outlanders in February 2021.  The sources of Mitsubishi's awareness of the Hood Defect may have included pre-production testing, pre-production design failure mode and analysis data, early consumer complaints made to dealers and to Mitsubishi itself, aggregate warranty data,

testing conducted in response to consumer complaints, and repair order and parts data received through Mitsubishi's network of dealers.

Mitsubishi has issued bulletins to its dealerships concerning the Hood Defect. In March 2021, Mitsubishi issued a Technical Service Bulletin ("TSB"), No. TSB-21-42A-001, that applied to all 2022 Outlanders sold in the United States. In this TSB, Mitsubishi wrote:

> A hood flutter may occur on 2022 Outlanders. This is caused by improper Hood Latch and Bumper height alignment. The Hood Latch and Bumper Height must be adjusted to resolve this condition. Please refer to the procedure below.

Additionally, this TSB stated that if "an affected vehicle is reported with the described condition," a dealer should "diagnose the condition, repair as described in this bulletin and submit a normal warranty claim" to Mitsubishi.

On April 16, 2022, Mitsubishi issued a notice to all its service and parts managers entitled "2022 Outlander Hood Flutter Adjustment Special Customer Satisfaction Campaign." This notice directed dealers to use a procedure "to install countermeasure weather-strips to resolve a hood flutter" on "all 2022 Outlander vehicles" excluding "ES Models," and stated that one set of parts would be automatically shipped to dealers for each vehicle currently in inventory and for each vehicle anticipated to be received in April 2021. On April 23, 2021, Mitsubishi issued a revision to TSB-21-42A-001, entitled TSB-21-42A-001REV. The stated purpose of this bulletin was "to provide a clean point for Hood Latch Adjustments." The revised bulletin indicated that hood flutter may occur only on certain 2022 Outlanders produced prior to March 25, 2021. On June 3, 2021, Mitsubishi issued TSB-21-42A-001REV2, a second revision to this bulletin that contained the same operative language as TSB-21-42A-001REV.

On June 22, 2021, Mitsubishi issued TSB-21-42A-005, entitled "Hood Flutter," which advised dealers that all 2022 Outlanders produced prior to May 12, 2021 may suffer from the

3

Hood Defect. This bulletin advised that weather-strips with internal padding had been incorporated into production as of May 2021 "to minimize the hood flutter." It instructed dealers to perform hood repairs "on a customer complaint basis only." Mitsubishi continued to issue TSB's regarding the Hood Defect through at least January 2022. Further, customers filed a number of complaints with the National Highway Traffic Safety Administration regarding the Hood Defect in 2021 and 2022.

### 2. Mr. Rezendes' Purchase

Mr. Rezendes is a Massachusetts resident who purchased a 2022 Mitsubishi Outlander vehicle in June 2021. Mr. Rezendes purchased his Outlander from Central Mitsubishi ("Central"), a licensed Mitsubishi dealer in Raynham, Massachusetts. Central assured Mr. Rezendes that his Outlander was safe and reliable, free from defects of workmanship, and accompanied by Mitsubishi's New Vehicle Limited Warranty ("the Limited Warranty"). The Limited Warranty provided, subject to specific exclusions, that Mitsubishi would repair any "defect in materials or workmanship" that appeared during the first five years or 60,000 odometer miles of the vehicle's life.

Within weeks of purchase, Mr. Rezendes' Outlander began to exhibit the Hood Defect, causing the hood of the vehicle to flutter and bounce when driven at highway speeds or in windy conditions. Mr. Rezendes felt unsafe and concerned that the hood would become unlatched and fly open while driving, and the Hood Defect distracted him when he drove at highway speeds or in windy conditions. Further, Mr. Rezendes' passengers did not want to drive with him in his Outlander due to the Hood Defect.

In July 2021, the month following his purchase, Mr. Rezendes complained to Central about the Hood Defect. Central told Mr. Rezendes there was no repair available to correct the

Hood Defect and did not attempt any repair. In November 2021, when the Outlander's odometer read 6,400 miles, Mr. Rezendes again complained to Central about the Hood Defect. Central, in accordance with Mitsubishi's Technical Services Bulletins, attempted a repair by adjusting the hood latch and replacing all three hood weather-strip seals. The Outlander continued to suffer from the Hood Defect after this attempted repair.

In February 2022, counsel for Mr. Rezendes sent a demand letter to Mitsubishi advising the company that Mr. Rezendes' Outlander suffered from the Hood Defect and had not been repaired, despite Mr. Rezendes providing the dealership with multiple opportunities to do so. Mr. Rezendes made a third complaint about the Hood Defect to Central in April 2022, and Central advised him that there were no repairs or replacement hoods at the time, but that it was waiting for Mitsubishi to issue a recall regarding the Hood Defect.

### 3. Procedural History

Mr. Rezendes initiated this lawsuit on February 9, 2022 by filing a putative class action complaint against Mitsubishi. [Dkt. 1]. He timely amended his complaint on June 8, 2022. [Dkt. 16]. Mitsubishi timely moved to dismiss all 6 counts in the complaint. [Dkt. 20].

## II.   LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege sufficient facts to state a claim for relief that is actionable as a matter of law and "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein. Id. Factual allegations must be accepted as true,

while conclusory legal conclusions are not entitled credit.  Id.  A court may not disregard properly pleaded factual allegations even if actual proof of those facts is improbable.  Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).  Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged."  Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted).

In addition to meeting the general pleading requirements of Rule 12(b)(6), claims of fraud must be pleaded with particularity pursuant to Federal Rule of Civil Procedure 9(b).  The purpose of this heightened pleading requirement is to "give notice to defendants of the plaintiffs' claim, to protect defendants whose reputation may be harmed by meritless claims of fraud, to discourage 'strike suits,' and to prevent the filing of suits that simply hope to uncover relevant information during discover."  Doyle v. Hasbro, Inc., 103 F.3d 186, 194 (1st Cir. 1996).  The complaint must "specify[] the false statements and by whom they were made", North Am. Catholic Educ. Prog. Fdn., Inc. v. Cardinale, 567 F.3d 8, 13 (1st Cir. 2009), and "identify[] the basis for inferring scienter"; further, it must also set forth "specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading."  Id. at 13 (quoting Greenstone v. Cambex Corp., 975 F.2d 22, 25 (1st Cir. 1992) (Breyer, J.)).

## III.  DISCUSSION

Mr. Rezendes brings six claims against Mitsubishi, each on behalf of a purported class of purchasers and lessees of the 2022 Mitsubishi Outlander.  Count 1, the jurisdiction-conferring count, alleges a violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301.  Count 2 alleges common-law fraudulent concealment.  Count 3 alleges common-law unjust enrichment.  Counts 4 and 5 are Massachusetts statutory claims for breach of express warranties and of implied warranty of merchantability, pursuant to M.G.L. c. 106 § 2-314.  Count 6 is a claim

under the Massachusetts consumer protection statute, Chapter 93A, that rests on allegations of fraudulent concealment of material information.

The Court addresses each claim in turn. Because the analysis of some claims depends on the Court's resolution of other claims, the claims are not addressed in numeric order.

### A. Count 2: Fraudulent Concealment

Although Mr. Rezendes describes Count 2 as a claim of "fraudulent concealment," the Court construes it as a claim of fraud by omission, as the former is not a recognized cause of action under Massachusetts law. A claim of fraud by omission "requires both concealment of material information and a duty requiring disclosure." Squeri v. Mount Ida Coll., 954 F.3d 56, 70 (1st Cir. 2020) (quoting Sahin v. Sahin, 758 N.E.2d 132, 138 n.9 (Mass. 2001)); see Kannavos v. Annino, 247 N.E.2d 708, 711 (Mass. 1969) (holding that there is no cause of action for "bare nondisclosure" absent a duty to disclose). A duty to disclose arises where "(i) there is a fiduciary or other similar relation of trust and confidence, (ii) there are matters known to the speaker that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading, or (iii) the nondisclosed fact is basic to, or goes to the essence of, the transaction." Squeri, 954 F.3d at 71 (quoting Knapp v. Neptune Tower Assocs., 892 N.E.2d 820, 824 (Mass. App. Ct. 2008)).

This district recently considered a similar fraud by omission claim against an automaker in Costa v. FCA US LLC, 542 F. Supp. 3d 83 (D. Mass. 2021), and that case is instructive here. There, consumers alleged that the manufacturer of Jeep automobiles concealed a defect in the headrest of the 2015 Jeep Grand Cherokee. Id. at 90–91. About 5 years after the plaintiffs purchased a Grand Cherokee, the "Active Head Restraint" feature of the headrest (which is designed to deploy in an accident to mitigate the risk of whiplash), unexpectedly deployed and

7

struck a plaintiff in the head, causing injury. Id. The plaintiffs alleged that they had purchased the vehicle, in part, because the defendant automaker's representations had led them to believe it was among the safest SUVs available, and that if they had known it was less safe than advertised, they would not have purchased it (or would have paid less for it). Id.

On these allegations, the court held that the plaintiffs failed to plead an actionable claim of fraud by omission. Id. at 101. The court first found that the plaintiffs had not alleged that the automaker was aware of the defect at the time the plaintiffs purchased the vehicle, and accordingly, that there was no information that the defendant could have fraudulently concealed at the time of purchase. Id. at 101–02. Separately, the court found that the plaintiffs had failed to adequately allege a duty to disclose. Id. at 102. Evaluating Knapp's three circumstances in which such a duty arises, the court first held, as a matter of law, that the purchaser of a vehicle may not plausibly allege that a fiduciary relationship exists between him or her and an automaker. See id. Second, it found that the plaintiffs had not alleged that the automaker had made any "partial or ambiguous statement of fact" concerning the vehicle's defect that required the automaker to disclose that defect at the time of purchase. Id. (citing Squeri, 954 F.3d at 70). And third, it held that a defective headrest did not "go to the essence" of the transaction at issue, the plaintiffs' purchase of the vehicle. Id. The court explained that the plaintiffs' allegation that the vehicle's reputation for safety had been a primary motivating factor in their decision to make the purchase was insufficient to meet the heightened pleading standard for fraud, as nothing in the complaint suggested "that [the automaker] was aware of [plaintiffs'] reasons for buying the Car and therefore would have no reason to believe that headrest safety was basic to the transaction." Id. at 102 n.15.

The Costa court relied on the Second Restatement of Torts' provision on liability for nondisclosure in delineating when a nondisclosed fact is sufficiently essential to the underlying transaction that it creates a duty to disclose—and thus, may give rise to a claim for fraud by omission. See id. (citing Restatement (Second) of Torts § 551(2)(e) (1977)). The Restatement defines a fact as essential to the transaction where the concealing party "knows that the other is about to enter into [the transaction] under a mistake as to [the facts], and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts." See Restatement (Second) of Torts § 551(2)(e). Here, as in Costa, the critical inquiry is whether the concealing party "knows that the other is about to enter into [the transaction] under a mistake." Costa concluded that the plaintiffs' allegations that they, *personally*, would not have purchased the Jeep if they doubted its reputation for safety were insufficient on this element under the heightened standard of Rule 9(b) because the complaint did not suggest *the seller* was aware of their reasons for buying the car. 542 F. Supp. 3d at 102 n.15. In other words, a plaintiff must plead that he or she put a seller on notice of his or her subjective motivations for purchase in order to allege that seller had a duty to disclose information material to those subjective motivations.

Following Costa, Mr. Rezendes has likewise failed to state a claim for fraud by omission. His complaint contains no specific allegations concerning his reasons for choosing to purchase 2022 Outlander, any particular statements he may have relied upon from Mitsubishi in forming his opinion of the 2022 Outlander, or any particular exchange he had with Central surrounding his vehicle purchase. Far from describing, as Rule 9(b) requires, "the who, what, where, and when of the allegedly false or fraudulent representation," Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 29 (1st Cir. 2004), the complaint does not even reach the level of

9

detail that the Costa complaint did—as those plaintiffs had, at minimum, connected the vehicle's defect to their subjective rationale for purchasing it.[1]  Because the complaint does not adequately plead the essential element of a duty to disclose, the Court need not address the question of whether it pleads concealment of material information.

Accordingly, Mitsubishi's motion to dismiss Count 2 will be **GRANTED**.

### B.      Counts 1 and 5: State and Federal Warranty Claims

Mr. Rezendes brings parallel state and federal claims for breach of warranty.  Because the federal Magnuson-Moss Warranty Act ("MMWA") "incorporate[s] the requirements of a state law cause of action," Duncan v. Nissan N. Am., Inc., 305 F. Supp. 3d 311, 322 (D. Mass. 2018), Massachusetts law sets the elements each of Counts 1 and 5.[2]

#### 1.      Count 5: Breach of Express Warranty

A breach of express warranty claim is generally "understood to be an action of contract," Taupier v. Davol, Inc., 490 F. Supp. 3d 430, 437 (quoting Sprague v. Upjohn Co., No. 91-cv-40035, 1995 WL 376934, at *2 (D. Mass. May 10, 1994)), and requires the plaintiff to "demonstrate that the defendant promised a specific result' [*sic*] and that defendant failed to deliver on his promise."  Id. at 438 (quoting Jackson v. Johnson & Johnson & Janssen Pharms., Inc., 330 F. Supp. 3d 616, 627 (D. Mass. 2018)).  "The theory of such a claim is that the defendants are liable to the plaintiff for failure to provide a design that meets a standard of

---

[1] Mr. Rezendes' reliance on First Choice Armor & Equipment v. Toyobo America, 717 F. Supp. 2d 156 (D. Mass. 2010), is misplaced.  He selectively quotes this opinion to suggest that a plaintiff may establish a duty to disclose by pleading that the defendant had "superior knowledge."  Id. at 162.  However, this case did not hold that "superior knowledge" alone creates such a duty—the plaintiff must also plead that the defendant made a misleading partial disclosure.  Id.  Because Mr. Rezendes does not plead the particularities of *any* disclosure Mitsubishi made to him, First Choice Armor is inapposite.

[2] Because the Court dismisses Count 4, the claim for breach of the implied warranty of merchantability, see infra, it does not analyze Count 1, the federal warranty claim, under an implied warranty of merchantability theory.

performance allegedly promised by the defendants." Id. (quoting Anthony's Pier Four Inc. v. Crandall Dry Dock Eng'rs, Inc., 489 N.E.2d 172, 175 (Mass. 1986)).

Here, Mr. Rezendes has adequately alleged a plausible breach of express warranty claim. The complaint alleges that Mr. Rezendes' vehicle was covered by Mitsubishi's New Vehicle Limited Warranty, [FAC ¶ 28], which promised that the vehicle was "free from defects in materials or workmanship at the time of delivery" and committed Mitsubishi to repair or replace any such defect that appeared "during the first 5 years or 60,000 odometer miles, whichever occurs first," [id. n.3]. Further, it alleges that Mitsubishi breached the New Vehicle Warranty by tendering Mr. Rezendes a vehicle with the Hood Defect, and failing to remedy this defect by adequately repairing or replacing the vehicle's hood and latch system. [See id. ¶¶ 32–36]. These allegations, if taken as true, state a claim for breach of express warranty; nothing further is required of Mr. Rezendes at this stage with respect to this claim.[3]

Accordingly, Mitsubishi's motion to dismiss Count 5 will be **DENIED**.

### 2. Claim 1: Magnuson-Moss Warranty Act

Because Mr. Rezendes had adequately pleaded the elements of a Massachusetts claim for breach of express warranty, he has adequately pleaded a cause of action under the MMWA. Duncan, 305 F. Supp. 3d at 322. However, the MMWA imposes additional jurisdictional requirements on plaintiffs who seek to assert their claims in federal court. An MMWA plaintiff

---

[3] The parties' extensive briefing on the distinction between manufacturing and design defects for the purpose of a breach of express warranty claim is mostly inapposite at this stage of the litigation. As a general matter, most form automotive warranties covering "materials and workmanship" will be construed to exclude coverage for design defects. E.g. Flores v. FCA US LLC, No. 20-cv-10972, 2021 WL 1122216 at *8 (E.D. Mich. Mar. 24, 2021) (collecting cases). However, at this stage, a plaintiff needs only state a plausible allegation that his vehicle's defect falls within the warranty. Here, Mr. Rezendes has adequately alleged facts to support a finding that the Hood Defect may be a failure of "materials and workmanship" rather than design. See e.g., O'Connor v. BMW of N. Am., LLC, No. 18-cv-03190, 2020 WL 1303285 at *5 (D. Colo. Mar. 19, 2020) ("Plaintiffs need not prove definitively that the defect was covered by the [w]arranty for their claim to survive a motion to dismiss"). Mitsubishi may re-raise its arguments concerning the nature of the defect at summary judgment.

11

in federal court must bring an individual claim of at least $25, assert a total amount in controversy of at least $50,000, and if the action is brought as a class action, the number of named plaintiffs must be at least 100. 15 U.S.C. § 2310(d)(3). These jurisdictional requirements do not apply to plaintiffs who assert MMWA claims in state court.

      Mr. Rezendes assuredly meets the $25 requirement with respect to his individual claim. Likewise, he fails to meet the requirement that his class claim identify at least 100 named plaintiffs. There is a split among out-of-circuit authorities on the question of whether a separate statute, the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), creates a workaround for a MMWA plaintiff like Mr. Rezendes who brings a putative class action without asserting at least 100 named class members. CAFA permits federal courts to exercise subject-matter jurisdiction over putative class actions where there are at least 100 class members (who need not be named at the time of filing), there is an aggregate amount in controversy exceeding $5 million, and there is minimal diversity among the parties. Id. At least one federal court of appeals, the Sixth Circuit, has held in an unpublished decision that a plaintiff whose class-action MMWA claim satisfies the requirements of CAFA establishes jurisdiction, even if it does not meet the MMWA's requirement of 100 named plaintiffs. Kuns v. Ford Motor Co., 543 F. App'x 572, 574 (6th Cir. 2013). Several district courts have similarly held that CAFA provides an alternate theory of jurisdiction to MMWA plaintiffs who fail to meet the 100-named-plaintiff requirement. See Dack v. Volkswagen Grp. of Am., 565 F. Supp. 3d 1135, 1143 (W.D. Mo. 2021); Barclay v. ICON Health & Fitness, Inc., No. 19-cv-2970, 2020 WL 6083704 at *8 (D. Minn. 2020); Gelis v. BMW, No. 2:17-cv-07386, 2018 WL 6804506 at *7 (D.N.J. Oct. 30, 2008); Stella v. LVMH Perfumes & Cosmetics USA, Inc., 564 F. Supp. 2d 833, 837 (N.D. Ill. 2008); Chavis v. Fidelity Warranty Servs., Inc., 415 F. Supp. 2d 620, 626 (D.S.C. 2006).

Conversely, the only federal court of appeals to publish precedent on this question, the Ninth Circuit, held that CAFA does not provide MMWA plaintiffs with means to evade the latter statute's requirement that any class action consist of at least 100 named plaintiffs. Floyd v. American Honda Motor Co., Inc., 966 F.3d 1027, 1034–35 (9th Cir. 2020). Several district courts have reached the same conclusion, both before and after the Ninth Circuit published its opinion in Floyd. See Cohen v. Subaru of N. Am., No. 1:20-cv-08442, 2022 WL 721307 at *9 (D.N.J. Mar. 10, 2022); Powell v. Subaru of N. Am., 502 F. Supp. 3d 856, 885 (D.N.J. 2020); Ebin v. Kangadis Foods, Inc., No. 13 Civ 2311, 2013 WL 3936193 at *1 (S.D.N.Y. July 26, 2013); Brisson v. Ford Motor Co., No. 8:08-cv-2491, 2009 WL 10670586 at *1 (M.D. Fla. Jan. 20, 2009).

In the absence of precedent from the First Circuit, this Court will adopt the Ninth Circuit's reasoning in Floyd, which correctly adheres to this circuit's and the Supreme Court's principles of statutory interpretation. In resolving a dispute over the language of a statute, the Court begins with the language of the statute itself. In re Fin. Oversight & Management Bd., 919 F.3d 121, 128 (1st Cir. 2019) (citing Landreth Timber Co. v. Landreth, 471 U.S. 681, 685 (1985)). If the statute's language is plain, the sole function of the courts is to enforce it according to its terms. Id. (citation omitted). Here, the text of the MMWA contains a clear requirement that any class action complaint brought pursuant to the statute name at least 100 plaintiffs. 15 U.S.C. § 2310(d)(3) (providing that "no claim shall be cognizable … if the action is brought as a class action, and the number of named plaintiffs is less than one hundred"); see Floyd, 966 F.3d at 1034. Thus, the MMWA plainly requires a putative class action plaintiff to name at least 100 individuals.

The Court may dispense with this statutory requirement only if it finds that Congress repealed it through passage of a subsequent statute; here, CAFA, which was enacted decades after the MMWA. However, "repeals by implication are disfavored," and "where two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1017 (1984) (internal quotation marks and citations omitted); see Floyd, 966 F.3d at 1034. Courts presume that "Congress will specifically address preexisting law when it wishes to suspend its normal operations in a later statute," and the burden is on the party arguing that the older statute was repealed to show "a clearly expressed congressional intention" that "two statutes cannot be harmonized." Epic Sys. Corp. v. Lewis, 138 S.Ct. 1612, 1624 (2018); see Floyd, 966 F.3d at 1035 ("The two statutes would have to present an irreconcilable conflict to overcome the strong presumption against implied repeals.").

Here, as in Floyd, the party—Mr. Rezendes—asserting that CAFA has impliedly repealed the MMWA's 100-named-plaintiff requirement cannot meet this tall task. Rather, there is no manifest evidence that Congress intended to overrule the MMWA by enacting CAFA, and the two statutes may exist in harmony, with the MMWA providing limits on the jurisdiction of federal district courts alone[4] over a specific type of class action claim.

Mr. Rezendes' class-based MMWA claim is dismissed, without prejudice, for lack of subject-matter jurisdiction. His individual MMWA claim meets a related barrier: the statute's requirement of a $50,000 total amount in controversy. 15 U.S.C. § 2310(d)(3)(B). Because the complaint is unclear as to whether Mr. Rezendes' individual claim amounts to $50,000, the

---

[4] As noted above, the 100-named-plaintiff requirement does not apply to MMWA claims brought in state courts. Thus, the Massachusetts Trial Court would provide an adequate forum for Mr. Rezendes to pursue a MMWA class claim consisting of fewer than 100 named plaintiffs.

14

Court must dismiss this claim without prejudice as well. Mr. Rezendes will be granted leave to replead his individual MMWA claim, class MMWA claim, or both, in either state or federal court.

Accordingly, Mitsubishi's motion to dismiss Count 1 will be **GRANTED**.

### C. Count 6: Chapter 93A Violation

Mr. Rezendes alleges that Mitsubishi violated Chapter 93A, the Massachusetts consumer protection statute, through its failure to disclose the Hood Defect to purchasers and lessees of the 2022 Outlander. The statute prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." M.G.L. c. 93A, § 2(a). To prevail on a Chapter 93A claim, a plaintiff must show that the defendant's deceptive act or practice caused the plaintiff to suffer an injury or loss. Casavant v. Norwegian Cruise Line Ltd., 952 N.E.2d 908, 912 (Mass. 2011).

By pleading a plausible breach of express warranty claim, Mr. Rezendes has pleaded a plausible claim for relief under Chapter 93A. See South Shore Hellenic Ch., Inc. v. Artech Ch. Interiors, Inc., 183 F. Supp. 3d 197, 219 (D. Mass. 2016). The regulations implementing Chapter 93A define "an unfair and deceptive act or practice" to include "fail[ure] to perform or fulfill any promises or obligations arising under a warranty." Id. (quoting 940 C.M.R. 3.08(2)). As Mr. Rezendes has adequately alleged that Mitsubishi failed to fulfill its obligations arising under the New Vehicle Limited Warranty, see supra analysis of Claim 5, he has successfully alleged a violation of Chapter 93A.

The complaint and briefing on this motion, however, primarily focus on a second theory of liability pursuant to Chapter 93A. This theory alleges, independently of any violation of warranty, that Mitsubishi was unfair and deceptive in knowingly selling vehicles with the Hood

15

Defect. The Supreme Judicial Court established the pleading standard for Chapter 93A claims concerning defective automobiles in Iannacchino v. Ford Motor Company, 888 N.E.2d 879 (Mass. 2008). In that case, a putative class of plaintiffs consisting of all Massachusetts residents who owned certain models of Ford vehicles alleged that the vehicles' door handles were defective and failed to comply with NHTSA safety standards. Id. at 883. The plaintiffs expressly excluded from their complaint any potential personal injury claims against Ford resulting from the defective door handles, id., but alleged that the defect created an ongoing safety risk, caused the vehicles to be worth less than their value were they to comply with door-handle safety standards, and imposed repair costs on the owners, see id. at 884. The automaker moved to dismiss, arguing that the plaintiffs had not pleaded any actual monetary loss resulting from the defect. Id. at 885.

The court held that "a claim, *supported by sufficient factual allegations*, that the plaintiffs [*sic*] own vehicles manufactured and *sold by Ford as meeting required government safety standards*; that the vehicle's door handles, as Ford knew, failed to comply with NHTSA safety standards; and that the noncompliance was not properly remedied, would support a cause of action" under Chapter 93A. Id. at 886 (emphasis added). On these hypothetical allegations, the plaintiffs would have been entitled to recover "the cost to bring the vehicles into compliance" with the relevant safety standards. Id. at 887. However, the court found that the plaintiffs had not adequately alleged that the vehicles had failed to comply with an objective government safety standard, id., and that a bare claim that the vehicles were "defective," absent evidence of injury, was not actionable, id. at 888. Rather, a plaintiff must allege either "personal injury," "property damage," or "a legally required standard that the vehicles were at least implicitly represented as meeting, but allegedly did not." Id. And where the plaintiff does not adequately

allege such a "legally required" standard that the vehicle fails to meet, it may not pursue a "claim of economic injury based on overpayment." Id.

Mr. Rezendes' Chapter 93A claim based on concealment of the Hood Defect is barred by Iannacchino. Neither his complaint nor his brief in opposition to this motion identifies any "legally required standard," id., that the 2022 Outlander fails to meet because its hoods are defective. Accordingly, he may not pursue a "claim of economic injury based on overpayment" for the vehicle, and may recover under Chapter 93A only for personal injury or property damage he has suffered as a result of the Hood Defect. See Costa, 542 F. Supp. 3d at 99–100 (distinguishing Iannacchino and denying motion to dismiss Chapter 93A claim where plaintiff alleged a personal injury resulting from a vehicular defect, and sought to recover "for property damage to the Car" rather than for overpayment); Costa v. Nissan N. Am., Inc., No. 18-cv-11523, 2019 WL 267463 at *2 (D. Mass. Jan. 18, 2019) (distinguishing Iannacchino as limited to "cases in which plaintiffs had suffered no personal injury or property damage"). However, the only injuries Mr. Rezendes alleges are economic: he asserts that he and the purported class members "would not have purchased the Class Vehicles, or would have paid less for the Class Vehicles," [FAC ¶ 166], and "have suffered damages in that they are left with vehicles of diminished value and utility," [id. ¶ 167]. With no actionable allegation of personal injury or property damage, Mr. Rezendes' concealment-based Chapter 93A claim falls squarely among those proscribed by Iannacchino's holding.

Accordingly, Mitsubishi's motion to dismiss Count 6 will be **DENIED** insofar as Mr. Rezendes seeks to prosecute a Chapter 93A violation related to the alleged breach of warranty, but Mr. Rezendes is precluded from pursuing a Chapter 93A claim on his concealment theory.

      **D.**    **Count 3: Unjust Enrichment**

Mr. Rezendes has adequately alleged a claim for unjust enrichment. To prevail on an unjust enrichment claim under Massachusetts law, a plaintiff must show: "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under the circumstances would be inequitable without payment for its value." Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 57 (1st Cir. 2009); see Lass v. Bank of America, N.A., 695 F.3d 129, 140 (1st Cir. 2012).

Here, Mitsubishi does not contest that Mr. Rezendes has adequately stated allegations sufficient to meet these elements. Rather, it relies on the principle that the unjust enrichment action is available only where no contract covers the subject of the parties' dispute. See Curley v. Softspikes, LLC, No. 09-cv-11451, 2010 WL 2545611 at *4 (D. Mass. June 21, 2010). A party may not recover for unjust enrichment (an equitable cause of action) where an adequate remedy at law—in this case, contractual damages—is available. Tomasella v. Nestle USA Inc., 962 F.3d 60, 82 (1st Cir. 2020). However, it is well-established that at this stage of litigation, a plaintiff may pursue "alternative and even inconsistent legal theories, *such as breach of contract and unjust enrichment*, even if Plaintiffs only can recover under one of these theories." Lass, 695 F.3d at 140 (emphasis added) (quoting Vieira v. First Am. Title Ins. Co., 668 F. Supp. 2d 282, 295 (D. Mass. 2009)). As Mr. Rezendes notes in his opposition to this motion, discovery may plausibly establish that he has no contractual remedy available to him. He is thus permitted to pursue discovery on both his contract claim (Count 5) and his unjust enrichment claim (Count 3), even though it is unlikely he will be able to recover on both claims.

Accordingly, Mitsubishi's motion to dismiss Count 3 will be **DENIED**.

E.       **Count 4: Breach of the Implied Warranty of Merchantability**

18

Finally, the Court will dismiss Count 4. A Massachusetts claim for breach of the implied warranty of merchantability requires a plaintiff to show "(1) that the defendant manufactured or sold the product; (2) that a defect or unreasonably dangerous condition existed at the time the product left the defendant's hands so that it was not reasonably suitable for the ordinary uses for which goods of that kind were sold; (3) that at the time of his injury, the plaintiff was using the product in a manner that the defendant intended or that could reasonably have been foreseen; and (4) that the defect or unreasonably defective condition ... was a legal cause of the plaintiff's injury." Lally v. Volkswagen, 698 N.E.2d 28, 43 (Mass. App. Ct. 1998); see Zoll Med. Corp. v. Barracuda Nets., Inc., 565 F. Supp. 3d 101, 107 (D. Mass. 2021).

Like a Chapter 93A claim, an implied warranty claim requires the plaintiff to plead an actual loss or injury. Iannacchino, 888 N.E.2d at 889. Generally, an implied warranty claim and a Chapter 93A claim that are based on "the same economic theory of injury" and "the same set of alleged facts" will "survive or fail under the same analysis." Id. Such is the case here, as Mr. Rezendes asserts the same facts in support of his implied warranty claim that he did with respect to his concealment claim under Chapter 93A. And here, as there, Mr. Rezendes does not plead any injury as the result of the defect other than economic loss. Massachusetts precludes recovery for solely economic losses on the implied warranty of merchantability, a tort-based theory of liability. See Bay State-Spray & Provincetown S.S., Inc. v. Caterpillar Tractor Co., 533 N.E.2d 1350, 1353 (Mass. 1989); Hooper v. Davis-Standard Corp., 482 F. Supp. 2d 157, 160 (D. Mass. 2007). Mr. Rezendes may seek to recover in contract for his economic losses on Count 5, the express warranty claim.

Accordingly, Mitsubishi's motion to dismiss Count 4 will be **GRANTED**.

## IV.     CONCLUSION

For the foregoing reasons, Mitsubishi's motion to dismiss, [Dkt. 20], is **GRANTED IN PART** and **DENIED IN PART**.  Count 1 is **DISMISSED** without prejudice.  Counts 2 and 4 are **DISMISSED** with prejudice.  Mitsubishi shall file its answer regarding the remaining claims within 14 days of entry of this Order.

**SO ORDERED.**

Dated: February 9, 2023                                                                /s/ Angel Kelley
                                                                                                         Hon. Angel Kelley
                                                                                                         United States District Judge